

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAZARINE WOODS, individually and as )
Independent Administrator of the Estate )
of Melvin C. Woods, Jr., deceased, )
                              )
        Plaintiff,           )      Civil Action No. 16 CV 1671
                              )
        v.                  )      Hon. Charles R. Norgle
                              )
CITY OF CHICAGO, et al., )
                              )
        Defendants.    )

## ORDER

Defendants' Motion for Judgment on the Pleadings [14] is denied. Defendants must answer Plaintiff's Complaint on or before January 18, 2017. The parties must exchange Rule 26 disclosures by February 3, 2017. The parties must submit an agreed written discovery order to the Court on or before February 17, 2017.

## STATEMENT

While being held at a Chicago Police Station, Melvin C. Woods, Jr. ("Woods") hanged himself. His wife, as the administrator of his estate, Dazarine Woods ("Dazarine" or "Plaintiff"), originally filed a lawsuit in state court. In her Seventh Amended Complaint ("Complaint"), Plaintiff added claims under 42 U.S.C. § 1983. Defendants City of Chicago and Detention Aide West ("West")[1] (collectively, Defendants") then removed[2] the lawsuit to this Court pursuant to 28 U.S.C. § 1441. Defendants subsequently filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which is now before the Court. For the following reasons, the motion is denied.

The factual allegations in this case are simple, but serious. On November 20, 2011, Woods was arrested—not pursuant to a warrant. He was then taken to the City of Chicago's Calumet Police Station and jailed. While at the police station he told several officers that he was going to kill himself. In the presence of police officers, he took off his pants and attempted to asphyxiate himself with his pants. The officers decided to remove Woods' remaining clothes, except for his underwear, and leave him alone in a cell. The cell had a security camera, but the camera was broken, and Defendants knew it was broken. Shortly after being left alone in the cell unmonitored, Woods was found dead, hanging from a cell bar by his underwear. Although Plaintiff's Complaint alleges that several police officers were involved in the care and custody of Woods at the police station, Plaintiff names West as the sole individual responsible for Woods' harm.

---

[1] Plaintiff's Seventh Amended Complaint only mentions West as "Detention Aide West." Detention Aide is presumably a job title, but the Complaint does not clarify. Defendants' motion refers to West as "Detention Aide Darius West," but their reply refers to West as "Detention Aide Darrin West" (emphasis added). It is beyond doubt that the parties are referring to a single individual, but the parties should verify West's legal name and correct the scrivener's error.

[2] When Defendants initially removed the case, they named the wrong parties in the caption. A month later, Defendants amended their removal motion to name the correct parties to this action.

The procedural background of this case is more complex. Dazarine filed a complaint in the Circuit Court of Cook County, Illinois on February 3, 2012—about three months after her husband's death. The case then languished in state court for nearly four years. During that time, Plaintiff filed six iterations of her complaint, each time alleging only state law claims. Plaintiff's amended complaints were met by Defendants' motions to dismiss, and the case has not proceeded to discovery on Plaintiff's claims.

The first time that Plaintiff alleged a violation of federal law was in her Seventh Amended Complaint. The Complaint contains two claims under 42 U.S.C. § 1983, both against West. There is not a Monell claim against the City of Chicago. Plaintiff specifically alleges in Count III that West violated Woods' Fourth Amendment rights by placing him in unreasonable conditions of confinement. In Count IV, Plaintiff alleges that West violated Woods' Fourth Amendment protections by failing to provide adequate medical care. Because Plaintiff's Complaint alleges claims arising under the United States Constitution, Defendants removed the action to federal court. Defendants have not answered the Complaint. Instead, Defendants now move for a judgment in their favor on Counts III and IV of Plaintiff's Complaint and argue that jurisdiction over the remaining state-law counts should be relinquished. Defendants' motion for judgment on the pleadings does not contest the factual allegations in Plaintiff's Complaint, but contends that they are entitled to qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. (internal quotation omitted). To determine the applicability of a qualified immunity defense, the Court conducts a familiar two-step inquiry. First, the Court must ask whether the plaintiff suffered a deprivation of a constitutional or statutory right; and second, if so, the Court must ask whether that right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). However, the Court may address the two steps in any sequence because a plaintiff must answer both questions in the affirmative. Pearson, 555 U.S. at 236.

Because this is a motion under Rule 12(c), the Court's inquiry is limited to the pleadings filed in the case. N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452-53 (7th Cir. 1998). Defendants have not answered, so the pleadings are limited to Plaintiff's Complaint. Plaintiff did not attach any exhibits to her Complaint. Defendants attached the previously-filed state court pleadings and orders to their notice of removal. However, no evidentiary materials have been submitted to the Court—there are no declarations, no affidavits, no video recordings, no administrative reports, etc. The Rule 12(c) standard, like a motion under Rule 12(b)(6), mandates for the Court to view the pleadings in a light most favorable to Plaintiff, as the Court does *passim*. Katz-Crank v. Haskett, --- F.3d ---, 2016 WL 7167893 (7th Cir. Dec. 8, 2016)

In support of their motion, Defendants rely primarily on the Supreme Court case, Taylor v. Barkes, 135 S.Ct. 2042 (2015). Defendants argue that "there is no constitutional right to the establishment of suicide protocols," and conclude that they are therefore immune from this lawsuit. Defs.' Mot. for J. on the Pleadings at 4. In Taylor, the widow of a deceased inmate filed a lawsuit under § 1983 against several individuals and entities associated with the institution where her husband died. 135 S.Ct. at 2043. The specific issue before the Supreme Court was whether the Commissioner of the Delaware Department of Corrections and the prison's warden, both of whom never interacted directly with the inmate, were entitled to qualified for immunity. Id. The Supreme Court held that the commissioner and warden were immune because "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide

prevention protocols." Id. at 2044. Defendants' reliance on Taylor and the doctrine of qualified immunity to shield themselves from liability is wrong for a couple reasons.

The first reason why Defendants' reliance on Taylor is misplaced is because Woods committed suicide in 2011, and the Supreme Court did not decide Taylor until 2015—four years later. The doctrine of qualified immunity requires the Court to consider "whether the right in question was clearly established at the time the events took place." Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003) (emphasis added); see also Taylor, 135 S.Ct. at 2044 ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (emphasis added). The legal ramifications of Taylor have zero effect on what Defendants, or any government official, knew in 2011. For this reason alone, the Court can disregard Taylor.

The second reason why Taylor is neither persuasive nor controlling is because it has significant factual differences from this case. The defendant-petitioners in Taylor were high-ranking government officials, and "it [was] undisputed that neither petitioner had personally interacted with Barkes or knew of his condition before his death." 135 S. Ct. at 2043. The Taylor decision made it clear that there is not a constitutional requirement for managers of detention and correctional facilities to develop and implement screening procedures designed to identify potentially suicidal detainees. Id. at 2044. However, the Taylor decision did not address anything about what actions police officers or prison guards must take when actually confronted with someone who is acting suicidal. The Taylor court left intact the general principle from Farmer v. Brennan, 511 U.S. 825 (1994) that under § 1983 "liability requires actual awareness of risk." Id. at 2045.

The factual scenario before the Supreme Court in Taylor is simply much different than the facts alleged in this case. Plaintiff alleges that West knew of Woods' suicidal tendencies, but nonetheless, physically placed him in an unmonitored cell with the exact apparel that Woods eventually used to successfully hang himself. The Supreme Court has "repeatedly told courts…not to define clearly established law at a high level of generality." Mullenix, 136 S.Ct. at 308. What is clearly established "must be taken in light of the specific context of the case, not as a broad general proposition." Id. (internal quotation omitted). Therefore, the Court rejects Defendants' broad proposition that because "Detainees have no constitutional right to suicide prevention protocols" they are immune from this lawsuit. Defs.' Reply in Further Supp. of Their Mot. for J. on the Pleadings at 1.

Qualified immunity is an affirmative defense; but unlike other affirmative defenses, once it is raised the burden is on the plaintiff to defeat it. Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008). To defeat a qualified immunity defense, a "plaintiff must show, on some level, that a violation of [a constitutional or statutory] right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." Lee v. Young, 533 F.3d 505, 512 (7th Cir. 2008) (citing Borello v. Allison, 446 F.3d 742, 750 (7th Cir. 2006)).

Here, Plaintiff points to, inter alia, Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992). In Hall, the Seventh Circuit affirmed the district court's denial of the defendant police officers' motion for summary judgment. Id. The defendant officers arrested Clifford Howard, Jr. and detained him at the local police department. Id. at 403. Mr. Howard had a history with the police department that included twenty-eight years and documented suicide attempts. Id. at 403-04. At the police station, Mr. Howard started acting belligerent and was locked in a cell by himself. Id. Within thirty minutes of arriving at the police station, Mr. Howard was found hanging in his cell by his undershorts. Id. Rejecting the defendant officers' qualified immunity defense, the Seventh Circuit found "clearly established in our Circuit before 1986 the rule that prison officials will be liable under Section 1983 for a pretrial detainee's

3

suicide if they were deliberately indifferent to a substantial suicide risk." Id. at 406. Over a decade later, the Seventh Circuit reaffirmed the clearly established rule by explicitly stating that "[t]he rule that officials, including police officers, will be 'liable under section 1983 for a pre-trial detainee's suicide if they were deliberately indifferent to a substantial suicide risk' was clearly established prior to 1998." Cavalieri, 321 F.3d at 623 (quoting Hall, 957 F2d at 406). These two cases certainly suffice to show that a violation of a constitutional right has been found in a case factually similar to Plaintiff's.

The Cavalieri and Hall decisions make it clear that a pretrial detainee with known suicidal tendencies has a constitutional right not to have his or her objectively serious medical need treated with deliberate indifference. Those cases fit within the general § 1983 legal framework, which designates that "the plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to her health and safety." Cavalieri, 321 F.3d at 620 (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994) and Payne v. Churchich, 161 F.3d 1030, 1041 (7th Cir. 1998)). It is undisputed that Woods' death is serious. Dazarine alleges that her husband exhibited suicidal tendencies (declaring that he was suicidal and attempting to hang himself with his pants) in the presence of City of Chicago police officers. For years, Chicago-area "prisons and jails have developed procedures for dealing with prisoners who display suicidal tendencies, such as removing items that could be used as a suicide weapon, like sheets or a sturdy telephone cord, or not leaving those prisoners unattended." Cavalieri, 321 F.3d at 621. But instead of implementing those life-saving procedures, Dazarine alleges that West chose to place Woods in an unmonitored room with the suicide device—Woods' underwear. These allegations sufficiently show that the harm to Woods was objectively serious, and West was deliberately indifferent to Wood's health and safety. Therefore, Defendants' motion for a judgment on the pleadings is denied.

Beyond these basic allegations, Dazarine's pleadings leave much to be desired. There is no information about why Woods was arrested, whether Woods had prior interaction with the police department, who the arresting officers were, who were the other officers on-duty at the police station when Woods was placed in the cell, how long Woods was in the cell unmonitored, what time was his body found, who found Woods' body, and what actions were taken to revive or treat Woods. These facts are important because what government officials did in response to finding an arrestee's body hanging in a cell may be the genuine issue in a case. See, e.g., Bradich ex rel. Estate of Bradich v. City of Chicago, 413 F.3d 688, 691 (7th Cir. 2005) (remanding for trial to determine whether lockup keepers spent ten minutes covering up their own misconduct instead of calling for help that could have saved Bradich's life). These are examples of the many questions that must be answered as this case proceeds to discovering whether West, or any other government officials, were actually deliberately indifferent to Woods' serious medical need.

In sum, Defendants motion for judgment on the pleadings is denied. Construing the allegations in the light favorable to Plaintiff, Defendant West is not entitled to qualified immunity. Defendants must answer Plaintiff's Complaint on or before January 18, 2017. The parties must exchange Rule 26 disclosures by February 3, 2017. The parties are also hereby ordered to submit an agreed written discovery order to the Court on or before February 17, 2017.

IT IS SO ORDERED.

ENTER: _Charles Norgle_

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 23, 2016

4